**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

APR 2 4 2015

Clerk, U.S. District Court
District Of Montana
Great Falls

| | |
|---|---|
| TAKEDA PHARMACEUTICALS AMERICA, INC.; TAKEDA PHARMACEUTICALS U.S.A., INC., F/K/A TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.; and TAKEDA PHARMACEUTICAL COMPANY, LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> VICTOR CONNELLY, <br><br> Defendant. | CV 14-50-GF-BMM <br><br><br><br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## I.   SYNOPSIS

Defendant Victor Connelly has moved this Court to dismiss the complaint

pursuant to Fed. R. Civ. P. 12(b)(1), for failure to exhaust tribal court remedies.

(Doc. 10). Plaintiffs Takeda Pharmaceuticals America, Inc. ("TPA"), Takeda

Pharmaceuticals U.S.A., Inc., f/k/a Takeda Pharmaceuticals North America, Inc.

("TPUSA"), and Takeda Pharmaceutical Company Limited ("TPC") (collectively

"Takeda") oppose the motion. (Doc. 20).

1

This case stems from a lawsuit presently venued in the Blackfeet Tribal Court. (Doc. 1). The corresponding Blackfeet Tribal Court case involves the same jurisdictional issues as the case pending before this Court. (Doc. 1-1). Takeda has moved to dismiss Connelly's complaint in the Blackfeet Tribal Court. (Doc. 1-6). Takeda's motion remains pending in the Blackfeet Tribal Court. (Doc. 1).

## II.   JURISDICTION and VENUE

The Court possesses jurisdiction under 28 U.S.C. §1331. The Blackfeet Tribal Court's jurisdiction over Takeda presents a federal question. *Plains Commerce Bank v. Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008). Takeda may bring a federal action to challenge the Blackfeet Tribal Court's jurisdiction. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985).

Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.2(b). The underlying tribal court suit remains venued in the Blackfeet Tribal Court. The Blackfeet Tribal Court is located in Glacier County, Montana. Glacier County is within the Great Falls Division of the District of Montana.

## III.   FACTUAL and PROCEDURAL BACKGROUND

Defendant Victor Connelly is an enrolled member of the Blackfeet Tribe who resides on the Blackfeet Reservation. (Doc. 1 at 3). Connelly sought medical treatment at the Indian Health Service ("IHS") clinic on the Blackfeet Reservation for his Type 2 diabetes beginning in 2005. *Id.* at 6. Medical personnel at the IHS

clinic on the Blackfeet Reservation prescribed Actos for Connelly from 2005 to 2012. (Doc. 11 at 4). Actos controls blood sugar in adults with Type 2 diabetes. (Doc. 1 at 5). IHS medical personnel prescribed Actos to Connelly on the Blackfeet Reservation. (Doc. 11 at 14). Connelly filled the Actos prescriptions and ingested Actos on the Blackfeet Reservation. *Id.* IHS medical personnel diagnosed Connelly with bladder cancer in 2008. (Doc. 1 at 6).

The IHS provides medical care to Blackfeet Indians at clinics on the Blackfeet Reservation. (Doc. 1 at 6). The IHS clinic where Connelly received services sits on an allotment owned by the Blackfeet Tribe. (Doc. 20-1). The Blackfeet Tribe leases this allotment to the Public Health Service. *Id.*

Plaintiff TPUSA markets, and Plaintiff TPA sells, markets, and distributes Actos. (Doc. 1 at 3). TPA and TPUSA are incorporated in Delaware and their principal place of business is located in Illinois. *Id.* Plaintiff TPC is a Japanese corporation with its principal place of business in Japan. *Id.* TPC researched and manufactured Actos. *Id.* TPC is the parent company of TPUSA. *Id.*

Connelly filed a complaint against Takeda in the Blackfeet Tribal Court on August 1, 2013, in which he alleged that he contracted bladder cancer as a proximate result of his Actos use. (Doc. 1-1). Connelly alleges that Takeda violated the Blackfeet Consumer Sales Practices Act and various common law torts including strict products liability, negligence, gross negligence, breach of express

and implied warranties, misrepresentation and fraud. *Id.* Takeda moved to dismiss Connelly's complaint in Blackfeet Tribal Court for lack of jurisdiction on August 30, 2013. (Doc. 1-6). Takeda's motion to dismiss remains pending. (Doc. 1 at 8).

Takeda participated in limited discovery. (Doc. 1 at 8). Takeda produced a corporate representative to testify about Connelly's allegation that Takeda employees entered the Blackfeet Reservation to market Actos to IHS physicians. *Id.* Takeda's corporate representative claimed that Takeda employees did not enter the Blackfeet Reservation to market or promote Actos. (Doc. 1-8). The corporate representative's deposition testimony also stated that Takeda's contacts with IHS were through IHS headquarters in Oklahoma. (Doc. 1-9). Takeda sales representatives and other employees also indicated that they never entered the Blackfeet Reservation. (Doc. 1-10).

Connelly filed an amended complaint in the Blackfeet Tribal Court on May 2, 2014. (Doc. 1-11). Connelly's amended complaint asserts tribal court jurisdiction based on Takeda's contacts with IHS to market Actos for the formulary, including to Blackfeet Indians. *Id.* Connelly's amended complaint also alleges that Takeda used marketing tactics to drive Actos business in all IHS facilities. *Id.*

Takeda filed a renewed motion to dismiss on May 14, 2014, in the Blackfeet Tribal Court. (Doc. 1-12). Takeda's renewed motion to dismiss continues to assert

4

that Connelly's new allegations fail to confer tribal court jurisdiction. *Id.* Takeda's renewed motion to dismiss remains pending in the Blackfeet Tribal Court. (Doc. 1 at 13).

Takeda sought injunctive and declaratory relief in this Court on July 8, 2014. (Doc. 1). Connelly moved to dismiss on September 10, 2014, based on Takeda's failure to exhaust tribal court remedies. (Doc. 10). Takeda has responded to Connelly's motion. (Doc. 20). Connelly has replied to Takeda's response. (Doc. 31). Takeda filed a surreply. (Doc. 35). The Court conducted a hearing on February 28, 2015, regarding Connelly's motion to dismiss. (Doc. 57).

## IV.   DISCUSSION

Non-Indians may bring a cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction. *Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 846 (9th Cir. 2009). Subject to limited exceptions, a non-Indian is subject to a mandatory requirement to first exhaust remedies in tribal court before bringing suit in federal court. *Nat'l Farmers Union*, 471 U.S. at 850-53; *see also Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 920 (9th Cir. 2008).

The tribal court exhaustion requirement is not a jurisdictional bar. *Grand Canyon Skywalk Development, LLC v. 'SA' NYU WA Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013). The exhaustion requirement instead represents a prerequisite to a federal court's exercise of its own jurisdiction. *Grand Canyon Skywalk*, 715 F.3d at

5

1200. A federal court may intervene only after the tribal appellate court has ruled on the jurisdictional issue. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 20 (1987).

Principles of comity obligate the Court to dismiss or abstain from adjudicating claims over which the tribal court's jurisdiction is "colorable" or "plausible." *Atwood v. Fort Peck Tribal Ct. Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008). The Court may relieve a non-Indian from the duty to exhaust, however, where it determines that tribal court jurisdiction is "plainly lacking." *Strate v. A-1 Contractors*, 520 U.S. 438, 459 n. 14 (1997); *see also Nat'l Farmers Union*, 471 U.S. at 854. Accordingly, this Court is charged with determining only whether the Blackfeet Tribal Court "plainly" lacks jurisdiction over Takeda.

## A.    Ownership Status of Land

Connelly bases his claims on activities that took place at the IHS facility on the Blackfeet Reservation. (Docs. 1, 1-1, 10). The IHS clinic sits on a land allotment owned by the Blackfeet Tribe. (Doc. 20-1). The Blackfeet Tribe leases the allotment to the Public Health Service ("PHS lease") for the purpose of operating the IHS clinic. *Id.* The Bureau of Indian Affairs ("BIA") for the Department of the Interior administers the lease. *Id.*

As a threshold matter, the Court must examine the ownership status of the land on which the IHS facility sits and the restrictions, if any, the PHS lease imposes on the Blackfeet Tribe's status as a landowner. Land ownership status

6

may prove a dispositive factor in determining whether to uphold a tribe's regulation of non-Indians. *Nevada v. Hicks*, 533 U.S. 353, 360 (2001). The absence of tribal land ownership generally corresponds with the absence of tribal civil jurisdiction. *Hicks*, 533 U.S. at 360. The Supreme Court has rejected tribal jurisdiction over non-member activity on land over which the tribe could not assert a landowner's right to occupy and exclude. *Strate*, 520 U.S. at 456; *Montana v. United States*, 450 U.S. 544, 557 (1981). Takeda asserts that the leased status of the land that the IHS clinic occupies deprives the Blackfeet Tribe of this authority. (Doc. 20 at 10-13).

An Indian tribe possesses the authority to lease its own land. 25 U.S.C. § 415. The Secretary of the Interior, as a procedural matter, grants and terminates leases involving tribal land. *Yavapai-Prescott Indian Tribe v. Watt*, 707 F.2d 1072, 1073 (9th Cir. 1983). The federal regulations applicable to tribal leases seek to "promote tribal control and self-determination over tribal land." 25 C.F.R. § 162.021(b). The BIA also aims to ensure that the use of tribal land comports with the Indian landowner's wishes and tribal law. 25 C.F.R. § 162.021(d).

Tribal law applies to these leases and to the lands underlying the leases. 25 C.F.R. § 162.014. The BIA must comply with tribal law in making decisions that concern a tribal land lease. 25 C.F.R. § 162.016. A tribe may contract or compact

under the Indian Self-Determination Act, 25 U.S.C. 450 *et seq.*, to administer any portion of the lease, including its cancellation. 25 C.F.R. § 162.018.

*McDonald v. Means*, 309 F.3d 530 (9th Cir. 2002), informs the Court's analysis of the PHS lease and the PHS lease's impact on the Blackfeet Tribe's landowner authority. In *McDonald*, a tribal member was involved in a vehicle collision with a non-member's horse that wandered onto a BIA road within an Indian reservation. 309 F.3d at 535. The tribal member sued the non-member in tribal court. *Id.* at 536. The non-member sought relief in federal court. *Id.* The federal district court held that the tribal court lacked jurisdiction and granted summary judgment in favor of the non-member. *Id.*

The Ninth Circuit reversed and concluded that the tribe retained civil jurisdiction over the suit. *Id.* The Ninth Circuit determined that the federal regulations applicable to the tribal road right-of-way grant to the BIA conferred significant tribal responsibilities and tribal control over the land that reserved the tribe's gatekeeping authority. *Id.* at 537-40. The Ninth Circuit also cited the fiduciary nature of the relationship between the tribe and the BIA as relevant to its determination that the tribe's right to occupy and exclude were not encumbered significantly by the BIA grant. *Id.* at 538. The Ninth Circuit determined that the BIA right-of-way qualifies as a tribal road not governed by *Strate*, or non-Indian fee land under *Montana*. *Id.* at 537.

8

The Blackfeet Tribe appears to exercise authority over the leased parcel comparable to the authority retained by the tribe in *McDonald* based on the applicable federal regulations. The Blackfeet Tribe owns the land in question. The BIA administers the PHS lease as part of its fiduciary responsibilities similar to the BIA's role in managing the right-of-way grant in *McDonald*. The PHS lease remains subject to BIA regulations similar to those applicable to the BIA grant in *McDonald*, both of which are for a uniquely Indian purpose and for the benefit of Indian tribes. The Blackfeet Tribe retains authority to commence, administer, and cancel the lease. The PHS lease does not appear to diminish the Blackfeet Tribe's landowner status to the point of negating Connelly's claim of Blackfeet Tribal Court jurisdiction. At a minimum, the IHS allotment does not qualify as non-Indian fee land that prohibits tribal court jurisdiction.

## B.   Tribal Court Jurisdiction Based on the Inherent Right to Exclude

Connelly argues that the recent decisions of the Ninth Circuit in *Water Wheel Camp Recreation Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011), and *Grand Canyon Skywalk* eliminate the need to consult *Montana*. (Doc. 11 at 14). Connelly claims that the land's status as tribal precludes application of *Montana*. (Docs. 11 at 14, 31 at 15). Connelly cites the fact that Takeda widely circulated Actos on the Blackfeet Reservation. *Id.* Connelly further argues that IHS physicians prescribed Actos on the Blackfeet Reservation and that he ingested

Actos on the Blackfeet Reservation. *Id.* Connelly argues that these factors invoke

application of the *Water Wheel* and *Grand Canyon Skywalk* analysis. *Id.* Takeda

argues that it marketed Actos to the BIA in Oklahoma and that Takeda's agents

never actually stepped foot on the Blackfeet Reservation. (Doc. 20 at 19).

Indian tribes maintain broad authority over the conduct of both tribal and

non-tribal members on Indian land, or land held in trust for a tribe by the United

States. *Strate*, 520 U.S. at 454; *Williams v. Lee*, 358 U.S. 217, 222 (1959). The

Court presumes that tribal courts maintain civil jurisdiction over the activities of

non-Indians on tribal land unless affirmatively limited by federal law. *McDonald*,

300 F.3d at 1040; *LaPlante*, 480 U.S. at 18.

An Indian tribe retains the authority to regulate activities that take place on

tribal land based on the tribe's inherent power to exclude. *South Dakota v.*

*Bourland*, 508 U.S. 679, 689 (1993); *see also New Mexico v. Mescalero Apache*

*Tribe*, 462 U.S. 324, 333 (1983). The Ninth Circuit previously has determined that

a tribe's inherent authority over its own land provides for regulatory authority over

non-member actions on tribal land. *Grand Canyon Skywalk*, 715 F.3d at 1204; *see*

*also Water Wheel*, 642 F.3d at 804-05. A tribe's adjudicatory authority remains

coextensive with its regulatory authority. *Strate*, 520 U.S. at 453.

This Court's analysis begins with *Water Wheel*. The tribe in *Water Wheel*

leased tribal land to a non-Indian corporation. 642 F.3d at 805. The non-Indian

corporation operated a recreational resort on the leased tribal land. *Id.* The lease

expired and the non-Indian corporation refused to vacate. *Id.* The non-Indian

corporation continued to operate on the tribal land. *Id.* The tribe brought an action

in the tribal court against the non-Indian corporation for eviction. *Id.* The non-

Indian corporation sought declaratory and injunctive relief in federal district court

while the tribal court case was pending. *Id.* at 807. The district court entered

jurisdictional rulings from which both parties appealed. *Id.* at 808.

The Ninth Circuit held that the tribe possessed regulatory jurisdiction over

the non-Indian corporation for claims arising from the non-Indian corporation's

activities on tribal land. *Id.* at 814. The Ninth Circuit determined that the tribe

possessed jurisdiction based on its inherent authority to exclude. *Id.* The Ninth

Circuit concluded that the tribe's status as landowner conferred regulatory

jurisdiction. *Id.* The tribe's inherent authority to exclude stands apart from the

limitations recognized in *Montana. Id.* The Court saw no need to consider

*Montana* where the non-member activity in question occurred on tribal land, the

activity interfered directly with the tribe's inherent powers to exclude and manage

its own lands, and there are no competing state interests at play. *Id.*

*Grand Canyon Skywalk* further guides this Court's analysis. A non-Indian

corporation and a tribal corporation entered into a contract to construct and manage

a tourist attraction on tribal land for a fee. *Grand Canyon Skywalk,* 715 F.3d at

1199. The tribe invoked its eminent domain authority when it commenced proceedings in tribal court to acquire the non-Indian corporation's interest. *Id.* The non-Indian corporation sought a temporary restraining order in federal court. *Id.* The district court denied the petition and required the non-Indian corporation to first exhaust tribal court remedies. *Id.* The Ninth Circuit affirmed. *Id.*

The Ninth Circuit recognized the tribe's inherent power to exclude in explaining that the tribe retained the power to limit access to the tourist attraction since the attraction was located on tribal land. *Id.* at 1204. The contract between the non-Indian corporation and the tribal corporation interfered with the tribe's right to exclude the non-Indian corporation from the reservation. *Id.* Tribal court jurisdiction was not "plainly" lacking based on the tribe's power to exclude, which provides for the lesser powers to regulate and adjudicate. *Id.* at 1205 (citing *Water Wheel*, 642 F.3d 802, and *Bourland*, 508 U.S. 679).

The analysis in *Water Wheel* and *Grand Canyon Skywalk* seems to apply to Takeda's alleged interference with the Blackfeet Tribe's right to exclude. The actions underlying Connelly's claims took place on the Blackfeet Reservation. The claims in *Water Wheel* and *Grand Canyon Skywalk* stemmed from conduct that took place on tribal land. Connelly further claims that he suffered the effects of Takeda's product Actos while on the Blackfeet Reservation and that he acquired the drug after it had been prescribed by IHS medical personnel. Connelly's claim

implicates no competing state interest that would mitigate against tribal court jurisdiction. *Water Wheel*, 642 F.3d at 814.

The Court at this juncture simply must determine whether Blackfeet Tribal Court "plainly" lacks jurisdiction. The IHS facility sits on leased Indian land. This fact, by itself, amounts to a colorable claim of jurisdiction. The Blackfeet Tribal Court maintains a colorable claim of jurisdiction based on the alleged conduct on tribal trust land. This determination precludes analysis at this point as to whether either *Montana* exception provides a colorable basis for Blackfeet Tribal Court jurisdiction. *Admiral Ins. Co. v. Blue Lake Rancheria Tribal Ct.*, 2012 WL 1144331 (N.D. Cal. 2012).

## V.    CONCLUSION

It is not apparent at this stage of the litigation that the Blackfeet Tribal Court "plainly" lacks jurisdiction over this matter as to excuse Takeda from exhausting tribal court remedies. *Grand Canyon Skywalk*, 715 F.3d at 1205. The orderly administration of justice will be served by allowing the Blackfeet Tribal Court to develop a factual record before this Court addresses the merits of Takeda's claims or questions concerning appropriate relief. *Stock West Corp. v. Taylor*, 942 F.2d 912, 919 (9th Cir. 1991).

**IT IS HEREBY ORDERED** that Defendant Victor Connelly's motion to dismiss (Doc. 10) is GRANTED. Plaintiff Takeda's complaint (Doc. 1) is DISMISSED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that Plaintiff Takeda's motion for summary judgment (Doc. 36) is DENIED WITHOUT PREJUDICE as moot.

DATED this 24th day of April, 2015.

Brian Morris
United States District Court Judge

14